IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| AMANDA GUNN, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CV 122-151 |
| | ) | (Formerly CR 120-014) |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

---

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

---

Petitioner, an inmate at the Federal Correctional Institution in Aliceville, Alabama, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence.  For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** Respondent's motion to dismiss be **GRANTED**, (doc. no. 6), Petitioner's § 2255 motion be **DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of Respondent.

I.    **BACKGROUND**

A.    **Indictment**

On March 3, 2021, the grand jury in the Southern District of Georgia charged Petitioner and co-defendant, Michael Peyton Gunn, in a seven-count superseding indictment.  United States v. Gunn, CR 120-014, doc. no. 153 (S.D. Ga. March 3, 2021) (hereinafter "CR 120-014").  The grand jury charged Petitioner in two of the counts:  Sex Trafficking Conspiracy (Count One) and Obstruction of a Child Sex Trafficking Investigation (Count Nine).  Id. Petitioner faced a statutory minimum of fifteen years imprisonment and a maximum of lifetime

imprisonment as to Count One, and not more than twenty-five years of imprisonment as to Count Nine. Id., doc. no. 154. The Court appointed attorney Frank Adam Nelson to represent Petitioner. Id., doc. no. 159.

### B.    Guilty Plea

Pursuant to a written Plea Agreement, Petitioner pled guilty to Count One, Sex Trafficking Conspiracy, on November 4, 2021. Id., doc. nos. 232-34. In exchange, the government agreed to: (1) move for an additional one-level reduction in offense level pursuant to U.S.S.G. § 3E1.1(a); (2) recommend the mandatory minimum of fifteen years at sentencing; (3) dismiss Count Nine; and (4) consider filing a motion, based on any "substantial assistance" provided by Petitioner, for downward departure under U.S.S.G. § 5K1.1 or requesting a reduction of Petitioner's sentence under Fed. R. Crim. P. 35. Id., doc. no. 233, pp. 4-5. Petitioner's plea agreement contained the following factual basis for her guilty plea:

> Beginning at a time unknown to the grand jury, but at least from in or about December 2018 and continuing through in or about November 2019, in Columbia County, within the Southern District of Georgia, and in the District of South Carolina, the defendants, being aided and abetted by each other and others known and unknown to the grand jury, conspired with each other and others known and unknown to the grand jury to knowingly, in and affecting interstate commerce, recruit, entice, harbor, transport, provide, obtain, advertise, and maintain Minor Victim #1, a person who had not attained the age of 18 years, knowing and in reckless disregard for the fact that Minor Victim #1 had not attained the age of 18 years, for the purpose of causing Minor Victim #1 to engage in commercial sex acts, and to benefit financially and by receipt of things of value from participation in a venture which recruited, enticed, harbored, transported, provided, obtained, advertised, and maintained Minor Victim #1 who had not attained the age of 18 years by causing Minor Victim #1 to engage in commercial sex acts, in violation of Title 18, United States Code, Section 1591(a). Defendant agrees the government would have proven the foregoing facts beyond a reasonable doubt at any trial on the merits.

Id. at 2. With her signature on the Plea Agreement, Petitioner "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 13. By signing the Plea

Agreement, Petitioner also "entirely waive[d] her right to a direct appeal of his conviction and sentence on any ground" unless the Court (1) sentenced him above the statutory maximum, (2) sentenced him above the advisory Sentencing Guidelines range, or (3) the government appealed the sentence. Id. at 6.  Absent one of those three conditions, "[Petitioner] explicitly and irrevocably instruct[ed] her attorney not to file an appeal." Id.  Further, Petitioner waived his right to collaterally attack his conviction and sentence on any ground other than ineffective assistance of counsel. Id.  Moreover, Petitioner agreed she read and carefully reviewed it with her attorney, understood each provision, voluntarily agreed to it, and "stipulate[d] that the factual basis set out therein is true and accurate in every respect." Id. at 13.

At the guilty plea hearing, Chief United States District Judge J. Randal Hall first confirmed no one had threatened or pressured Petitioner into pleading guilty and that she clearly understood where she was and why she was in court. Id., doc. no. 334 ("Rule 11 Tr."), pp. 5, 6-7.  Chief Judge Hall then reviewed the conspiracy offense to which Petitioner was pleading, as well as Petitioner's agreement to "forfeiture of all forfeitable assets" and "registration as a sex offender under the Sex Offender Registration Notification Act." Id. at 12.  Chief Judge Hall informed Petitioner that, by signing the plea agreement, Petitioner agreed "all of the facts that are contained in the plea agreement are true and accurate, and [he] agree[s] to be bound by all of the terms of the agreement." Id. at 11.  Chief Judge Hall confirmed that other than the plea agreement, no one on behalf of the government had promised anything to procure the guilty plea. Id. at 11.  Petitioner also testified under oath she was satisfied with the assistance she had received from her attorney, had enough time to go over the charges with counsel, and she had read and reviewed the Plea Agreement with counsel before signing it. Id. at 8, 10-11.

Chief Judge Hall explained the rights Petitioner would be waiving by pleading guilty, and Petitioner affirmed she clearly understood those rights.  Id. at 8-10.  Among the rights explained, Chief Judge Hall reviewed the right to trial by jury, the presumption of innocence, the government's burden to prove guilt beyond a reasonable doubt, the right to present and cross-examine witnesses, and the right to remain silent.  Id.  Chief Judge Hall also specifically reviewed the appeal and collateral attack waiver provisions of the plea agreement.  Id. at 12.  Chief Judge Hall explained the maximum penalty for the charge to which Petitioner was pleading guilty and explained the role of the Sentencing Guidelines, emphasizing they were only advisory, and not mandatory.  Id. at 16-17.  Furthermore, in response to a question asked by Chief Judge Hall, Petitioner averred no one had made her any promise or prediction she would receive a particular sentence.  Id.

Next, the Court heard a factual basis for the guilty plea from FBI Special Agent Harold Godbee.  Id. at 17.  Special Agent Godbee testified that, on February 5, 2020, he was analyzing pornographic pictures of a minor child approximately 13 years old in an attempt to locate her.  Id. at 20, 28.  From the picture data, Special Agent Godbee was able to locate the minor victim, speak with her parents, Mr. and Ms. Gunn, and conduct a forensic interview with the minor victim.  Id. at 28.  The next day, after receiving more pornographic images of the minor victim, Special Agent Godbee noticed the tip of a shoe worn by the picture taker.  Id.  After gaining consent to search the Gunn residence, agents found the shoe from the image, which belonged to Mr. Gunn.  Id. at 30-31.

Agents obtained a search warrant for the residence, and Mr. Gunn was arrested.  Id.  The minor victim later told Agent Godbee that Mr. Gunn took the pornographic pictures, she was forced by her parents to engage in prostitution for "the Order," and Mr. Gunn advertised

her online for sex.  Id. at 30-35.  The minor victim's parents also made her hide evidence, such as the iPhone used to take the images, after the FBI initially came to their house.  Id.  The minor victim was forced to engage in sexual acts at different locations in Georgia, across state lines in South Carolina, and at the Gunn residence.  Id. at 36.  When Ms. Gunn spoke with Agent Godbee, she told him the same things as the minor victim and stated she was also forced to engage in prostitution.  Id. at 37-38.  Petitioner confirmed everything Agent Godbee told the Court was correct.  Id. at 40.  Chief Judge Hall accepted Petitioner's guilty plea.  Id. at 41.

     **C.**    **Sentencing**

The United States Probation Office prepared a Presentence Investigation Report ("PSI") which set Petitioner's Total Offense Level at thirty-eight, with no criminal history and a Guidelines imprisonment range of 235 to 293 months.  PSI ¶¶ 54, 58, 97.  After enhancements and adjustments, Petitioner's offense level was forty-one, and Petitioner received a three-level reduction as follows:  (1) two levels under USSG § 3E1.1(a) because Petitioner clearly demonstrated acceptance of responsibility and (2) one level under USSG §3E1.1(b) because Petitioner assisted the government by providing timely notification of her intention to accept a plea deal.  PSI ¶¶ 52-53.

The statutory minimum term of imprisonment for Count One was fifteen years.  CR 120-014, doc. no. 154, p. 1; PSI ¶ 96.  Petitioner raised no objections to the PSI, and the sentencing occurred on May 24, 2022.  Id., doc. no. 333, p. 3.  Chief Judge Hall adopted the factual statements in the PSI, as well as the conclusions contained therein, and determined the advisory Guidelines range was 235 to 293 months of imprisonment.  Id.  After hearing remarks from all interested parties including Petitioner and her counsel, Chief Judge Hall sentenced Petitioner to 235 months of imprisonment, the very bottom of the Guidelines range.  Id. at 41.

Chief Judge Hall denied the government's motion for a downward departure but cited the government's arguments in support of a departure when sentencing Petitioner at the bottom of the guidelines range.  Id., doc. no. 311; doc. no. 333, pp. 41-42.  Petitioner did not file a direct appeal.

### D.   § 2255 Proceedings

Petitioner timely filed the instant § 2255 motion to vacate, set aside, or correct her sentence, raising the following claims:

(1)    The Court denied Petitioner the opportunity for a fair trial by denying her motion for a separate trial from Mr. Gunn.

(2)    Petitioner was only given five minutes to read and sign the Plea Agreement.

(3)    The government unjustifiably revoked its 5K1.1 motion for downward departure at sentencing, unfairly characterizing portions of Petitioner's trial testimony as failing to take responsibility for her actions.

(See generally doc. no. 1.)

On March 20, 2023, Respondent filed a motion to dismiss, contending Petitioner's claims are barred by her collateral attack waiver, and there was no cause or prejudice to overcome procedural default.  (See generally doc. no. 6.)  On April 16, 2023, Petitioner filed a response in opposition to the motion.  (Doc. no. 8.)

## II.   STANDARD

A prisoner may move under 28 U.S.C. § 2255 to vacate, set aside, or correct a federal sentence imposed in violation of the Constitution or laws of the United States, imposed by a court lacking jurisdiction, exceeding the maximum authorized by law, or otherwise subject to collateral attack.  However, the collateral relief available under § 2255 is limited, as the statute "does not provide a remedy for every alleged error in conviction and sentencing."  Spencer v.

<u>United States</u>, 773 F.3d 1132, 1138 (11th Cir. 2014).  That is, Petitioner may not use this collateral attack as "a surrogate for a direct appeal."  <u>Lynn v. United States</u>, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).  "Generally speaking, an available challenge to a criminal conviction or sentence must be advanced on direct appeal or else it will be considered procedurally barred in a § 2255 proceeding."  <u>Mills v. United States</u>, 36 F.3d 1052, 1055 (11th Cir. 1994).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development."  <u>Id.</u>

"Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"  <u>Lynn</u>, 365 F.3d at 1232.  The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions:  (1) cause for the default and actual prejudice from the alleged error, or (2) "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  <u>Mills</u>, 36 F.3d at 1055-56 (citing <u>Murray v. Carrier</u>, 477 U.S. 478, 496 (1986)).  "'[A]ctual innocence' means factual innocence, not mere legal insufficiency."  <u>Bousley v. United States</u>, 523 U.S. 614, 623-24 (1998) (citation omitted).  As the Supreme Court emphasized, "The miscarriage of justice exception, we underscore, applies to a <u>severely confined</u> category:  cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the petitioner].'"  <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 394-95 (2013) (emphasis added).

"Once [a] defendant's chance to appeal has been waived or exhausted, . . . we are entitled to presume he stands fairly and finally convicted, especially when . . . he already has had a fair opportunity to present his federal claims to a federal forum."  <u>United States v. Frady</u>,

456 U.S. 152, 164 (1982). Consequently, "[o]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir. 2014) (citation omitted); see also United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000) (same); White v. United States, 371 F.3d 900, 902 (7th Cir. 2004) ("[W]e do not see how a federal prisoner--who must file his motion for relief under 2255 in the very court that convicted him--can be allowed to do so if all he is doing is rehashing a claim that had been rejected on the direct appeal.").

Nor will the Court reconsider a previously raised claim where it is merely a re-characterization of an issue raised on direct appeal. Nyhuis, 211 F.3d at 1343. The Court can employ its discretion in deciding whether a claim has previously been raised. Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . [or] be supported by different legal arguments . . . or be couched in different language . . . or vary in immaterial respects" (internal citations omitted)), *superseded by statute on other grounds*, 28 U.S.C. §§ 2244(b), 2255(h). In sum, to obtain review in this § 2255 proceeding of a previously raised claim, Petitioner must show an intervening change in law since his appeal was decided and that a "complete miscarriage of justice" would occur if the claim is not considered in these proceedings. Davis v. United States, 417 U.S. 333, 346-47 (1974).

## III.    DISCUSSION

### A.    Petitioner's Claims Are Barred by The Valid Collateral Attack Waiver in Her Plea Agreement

It is well settled that waiver of the right to attack a sentence and conviction on direct appeal or by habeas petition is enforceable if the waiver is knowing and voluntary. United

States v. DiFalco, 837 F.3d 1207, 1219-20 (11th Cir. 2016); United States v. Weaver, 275 F.3d 1320, 1333 (11th Cir. 2001); United States v. Bushert, 997 F.2d 1343, 1345 (11th Cir. 1993); see also United States v. Warner-Freeman, 270 F. App'x 754, 757 (11th Cir. 2008) (*per curiam*). Moreover, "[a]n appeal waiver includes the waiver of the right to appeal difficult or debatable legal issues or even blatant error." United States v. Grinard-Henry, 399 F.3d 1294, 1296 (11th Cir. 2005) (*per curiam*). "To establish the waiver's validity, the government must show either that (1) the district court specifically questioned the defendant about the provision during the plea colloquy, or (2) it is manifestly clear from the record that the defendant fully understood the significance of the waiver." Weaver, 275 F.3d at 1333. If the government meets this burden, then the waiver is valid and enforceable. See United States v. Pease, 240 F.3d 938, 942 (11th Cir. 2001) (enforcing waiver provision where defendant was specifically questioned during plea proceedings about waiver); United States v. Howle, 166 F.3d 1166, 1168-69 (11th Cir. 1999); United States v. Benitez-Zapata, 131 F.3d 1444, 1446-47 (11th Cir. 1997).

Here, the Plea Agreement, signed and verified by Petitioner, explicitly set forth she was voluntarily waiving her right to a direct appeal of the conviction and sentence, as well as her right to collaterally attack the same, on any ground other than ineffective assistance of counsel. CR 120-014, doc. no. 233, p. 9. The waiver exceptions do not apply because Petitioner's sentence did not exceed the statutory maximum of ten years of imprisonment or the advisory Guidelines range as determined by Chief Judge Hall at sentencing, and the government did not appeal. Moreover, Petitioner's claims are not based on claims of ineffective assistance, and therefore, do not fall within the only exception to the collateral attack waiver. Chief Judge Hall, while instructing Petitioner to "[l]isten very carefully," reviewed the appeal and collateral

attack waiver provision, in the Plea Agreement during the change of plea proceedings and confirmed Petitioner understood and agreed to the terms.  Rule 11 Tr. 12.

"Solemn declarations in open court carry a strong presumption of verity" and "constitute a formidable barrier in any subsequent collateral proceedings." Blackledge v. Allison, 431 U.S. 63, 74 (1977).  The record before the Court demonstrates Petitioner's agreement to the collateral attack waiver was knowing and voluntary, and her claims fall within the scope of the waiver.  Therefore, enforcement of this valid collateral attack waiver bars Petitioner's claims.  See Benitez-Zapata, 131 F.3d at 1146 (enforcing knowing and voluntary appeal waiver to bar a 5K1 claim); Patel v. United States, 252 F. App'x 970, 974-75 (11th Cir. 2007) (enforcing knowing and voluntary appeal waiver to bar last-minute attempt to escape effect of appeal waiver on valid knowing and voluntary guilty plea); Hung The Pham v. United States, No. 1:05-CR-543-15-JEC, 2014 WL 1292834, at *1 (N.D. Ga. Mar. 31, 2014) (enforcing knowing and voluntary appeal waiver to bar a fair trial claim).

### B.    Petitioner's Collateral Attack Waiver Is Enforceable Because Her Guilty Plea Was Knowing and Voluntary

Having determined that Petitioner knowingly and voluntarily waived the right to attack her sentence and conviction on direct appeal or by collateral attack in her § 2255 motion, the Court turns to the knowing and voluntary nature of the guilty plea.  For if a guilty plea is not knowingly and voluntarily entered, that "would in turn mean that a court could not enforce a waiver contained within that plea agreement." Vaca-Ortiz v. United States, 320 F. Supp. 2d 1362, 1365 (N.D. Ga. 2004) (citing Bushert, 997 F.2d at 1350-51).

### 1.      Standard for Enforceability of Guilty Pleas

Once a guilty plea becomes final, unless the record demonstrates that the sentencing court lacked the power to enter the conviction or impose the sentence, a petitioner may only challenge the knowing, voluntary nature of the plea.  United States v. Broce, 488 U.S. 563, 569 (1989).  In conducting its analysis,  the Court starts with the proposition that a trial court may not accept a guilty plea without an affirmative showing on the record that the plea was intelligent and voluntary.  Boykin v. Alabama, 395 U.S. 238, 242-43 (1969).  The Eleventh Circuit has described the requirements for a valid guilty plea as follows:  "The Fourteenth Amendment Due Process Clause requires that a plea of guilty be knowingly and voluntarily entered because it involves a waiver of a number of the defendant's constitutional rights.  A plea of guilty cannot support a judgment of guilt unless it was voluntary in a constitutional sense."  United States v. Brown, 117 F.3d 471, 476 (11th Cir. 1997).  A guilty plea may be involuntary in a constitutional sense if a defendant is coerced into his plea, if a defendant does not understand the nature of the constitutional protections he is waiving, or "if a defendant has such an incomplete understanding of the charge that his plea cannot stand as an intelligent admission of guilt."  Id.  Thus, a defendant must receive "real notice of the true nature of the charged crime."  Id.

The Eleventh Circuit has further explained that, for a guilty plea to be knowingly and voluntarily made, the court accepting the guilty plea must "specifically address three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005) (per curiam) (citations omitted).  In addition, "a defendant who seeks reversal of his conviction after a guilty plea . .

. must show a reasonable probability that, but for the error [under Rule 11 of the court accepting the guilty plea], he would not have entered the plea." Id. at 1020 (quoting United States v. Dominguez Benitez, 542 U.S. 74, 83 (2004)).

### 2.  Chief Judge Hall's Colloquy with Petitioner Satisfied the Core Principles

Chief Judge Hall reviewed the conspiracy charge against Petitioner and confirmed Petitioner had sufficient time to review the charges with her attorney, Mr. Nelson.  Rule 11 Tr. 8, 10-11.  Chief Judge Hall also provided a detailed explanation of the rights Petitioner would forfeit by pleading guilty, and Petitioner affirmed she understood her decision to plead guilty would result in a waiver of these rights.  Id. at 8-10.  Petitioner testified that other than the promises the government made in the plea agreement, no one had made promises to get her to plead guilty, and Chief Judge Hall confirmed Petitioner's decision to plead guilty was not the result of force, pressure, threats or promises other than those in the plea agreement.  Id. at 11. Chief Judge Hall instructed Petitioner to "[l]isten very carefully" and read the appellate and collateral-attack waivers contained in the plea agreement, which Petitioner stated she understood.  Id. at 12.

Additionally, Chief Judge Hall informed Petitioner of the possible penalties she faced upon conviction, including a minimum of fifteen years of imprisonment.  Id.  Chief Judge Hall reminded Petitioner that he could still sentence her above or below the guidelines and she stated that she understood.  Id. at 16.  Finally, Petitioner testified she was satisfied with the help he had received from Mr. Nelson.  Id. at 8; see also doc. no. 233, p. 11 ("Defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is

completely satisfied with the legal advice given and the work performed by her attorney."); p. 13 ("I have read and carefully reviewed this agreement with my attorney.").

Petitioner argues her guilty plea was invalid because she "only had five minutes" to look at her plea deal and decide whether she would take it. (Doc. no. 1, p. 5.) Despite multiple opportunities, Petitioner expressed no hint of dissatisfaction or pressure during the lengthy plea colloquy. Among many broad and probing questions, Chief Judge Hall specifically asked Petitioner if anyone had "threatened, pressured or forced [her] to come into court . . . and change [her] plea to guilty on this charge" to which Petitioner responded, "No, sir." Rule 11 Tr. 5. Chief Judge Hall provided Petitioner with the opportunity to speak with her attorney and specifically asked if she had enough time to speak with her attorney about the Plea Agreement. Id. at 5-8. At no point did Petitioner ask for more time to consider her decision to enter a plea deal, even after the Court told her that she could interrupt the hearing to speak to her attorney or ask him a question "if for some reason [she] fe[lt] the need to." Id. at 5. The Court declines to accept Petitioner's new allegations over her sworn testimony. See Gambrel v. United States, No. CR 109-003, 2013 WL 3934205, at *14 (S.D. Ga. July 30, 2013); Blackledge, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity.").

The thorough plea colloquy, as discussed above, ensured Petitioner understood both the nature of the charges and the consequences of her guilty plea, and that Petitioner was not coerced into pleading guilty. See Moriarty, 429 F.3d at 1019; Patel, 252 F. App'x 974-75. Accordingly, the Court concludes Petitioner entered a knowing and voluntary guilty plea to the conspiracy charge. Thus, the collateral attack waiver is enforceable and as discussed above, bars Petitioner's claims.

**C.    Petitioner's Claims Are Procedurally Defaulted on All Grounds Because Petitioner Did Not File A Direct Appeal and They Have No Merit**

Even if Petitioner's claims were not barred by the valid collateral attack waiver, they are procedurally defaulted.  A petitioner seeking collateral relief must clear "a significantly higher hurdle than would exist on direct appeal." Brown v. United States, 720 F.3d 1316, 1333 (11th Cir. 2013) (quoting Frady, 456 U.S. at 166).  "Generally, if a challenge to a conviction or sentence is not made on direct appeal, it will be procedurally barred in a § 2255 challenge." United States v. Montano, 398 F.3d 1276, 1279-80 (11th Cir. 2005) (citing Mills, 36 F.3d at 1055).  "A ground of error is usually 'available' on direct appeal when its merits can be reviewed without further factual development." Mills, 36 F.3d at 1055.  In other words, Petitioner may not use this collateral attack as "a surrogate for a direct appeal." Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citation omitted).

The procedural bar to claims which could have been raised on direct appeal, but were not, may be avoided if the petitioner establishes one of two exceptions:  (1) cause for the default and actual prejudice from the alleged error, or (2) a fundamental miscarriage of justice, covering "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." Mills, 36 F.3d at 1055-56 (citing Murray v. Carrier, 477 U.S. 478, 496 (1986)).  "Cause" requires a showing of some external impediment that prevented a claim from previously being raised. See Weeks v. Jones, 52 F.3d 1559, 1561 (11th Cir. 1995) (citing McCleskey v. Zant, 499 U.S. 467, 497 (1991)).  "[F]utility cannot constitute cause if it means simply that a claim was 'unacceptable to that particular court at that particular time.'" Bousley, 523 U.S. at 623 (citations omitted); see also United States v. Bane, 948 F.3d 1290, 1297 (11th Cir. 2020) ("[A] claim is not novel when counsel made a

conscious choice not to pursue the claim on direct appeal because of perceived futility, or when the building blocks of the claim were available to counsel." (citations omitted)); Lynn, 365 F.3d at 1235 ("In procedural default cases, the question is not whether legal developments or new evidence has made a claim easier or better, but whether at the time of the direct appeal the claim was available at all.")

To demonstrate prejudice, Petitioner "must shoulder the burden of showing, not merely that the errors at his trial [or sentencing] created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial [or sentencing] with error of constitutional dimensions." Frady, 456 U.S. at 170.

> In the alternative, a defendant can also overcome the procedural bar created by the failure to appeal if he could [sic] show a fundamental miscarriage of justice; "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default."

Montano, 398 F.3d at 1280 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)). Actual innocence "applies to a severely confined category: cases in which new reliable evidence shows it is more likely than not that no reasonable juror would have convicted [the petitioner]." Perkins, 569 U.S. at 394-95.

Petitioner has not demonstrated cause for the default. Petitioner alleges she was unable to raise her claims on appeal because she was unaware of her appeal rights and could not properly conduct legal research due to her incarceration. (Doc. no. 1, pp. 4-6, 9; doc. no. 8, p. 1.) The Eleventh Circuit has made clear that "ignorance of available post-conviction remedies cannot excuse a procedural default." Tower v. Phillips, 7 F.3d 206, 211 (11th Cir. 1993); see also Harmon v. Barton, 894 F.2d 1268, 1275 (11th Cir. 1990). The mere fact Petitioner was

unaware or incarcerated has no bearing on her ability to appeal.  Harmon, 894 F.2d at 1275

(quoting Smith v. Newsome, 876 F.2d 1461, 1465 (11th Cir.1989)) (""[F]ailure to act or think

like a lawyer cannot be cause for failing to assert a claim" since one has no constitutional right

to counsel during habeas corpus proceedings.")  Thus, Petitioner does not validly assert any

cause which prevented her from asserting her three claims in a direct appeal.

Petitioner also cannot satisfy the actual prejudice requirement.  As to Ground One,

Petitioner asserts that a trial with her co-defendant would have unfairly prejudiced her because

"[the jury] would have been blinded by the terrible things they would hear that my co-

defendant did," thus, her case should have been severed from him.  (Doc. no. 1, p. 4.)  For the

reasons stated in the Order denying Petitioner's request for a separate trial, the Court was well

within its discretion to try both defendants together and committed no error.  CR 120-014, doc.

no. 205.  Furthermore, there can be no actual prejudice because Petitioner pled guilty.  Rule

11 Tr. 40-41.

As to Ground Two, there can be no actual prejudice because, as explained *supra*,

Petitioner knowingly and voluntarily changed her plea, and she admitted to Chief Judge Hall

during the plea colloquy she had sufficient time to consider the Plea Agreement.  Id. at 5, 8-

11.

There is no actual prejudice with respect to Ground Three either.  Petitioner complains

the government withdrew its 5K1.1 motion "at the last minute."  (Doc. no. 1, p. 6; doc. no. 8,

p. 1.)  However, the record reflects the government never withdrew the motion and followed

through at sentencing by arguing for a downward departure.  CR 120-014, doc. no. 333, p. 25.

The Court denied the motion but cited the government's argument for a departure when

explaining the decision to sentence Petitioner at the very bottom of the Guidelines range.  Id.
at 28-30.  Petitioner thus could not have suffered any actual prejudice.

Because Petitioner cannot satisfy the cause and prejudice standard, her procedural
default is not excused.  See Mills, 36 F.3d at 1055.  Moreover, Petitioner cannot satisfy the
rigorous fundamental miscarriage of justice exception.  A fundamental miscarriage of justice
occurs only where "a constitutional violation has probably resulted in the conviction of
someone who is actually innocent[.]"  Montano, F.3d at 1279.  Petitioner does not present any
new evidence and continues to admit she is guilty.  (See e.g., doc. no. 8, p. 2).

For these reasons, all of Petitioner's claims are procedurally defaulted.

IV.    **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS**
Respondent's motion to dismiss be **GRANTED**, (doc. no. 6), Petitioner's § 2255 motion be
**DENIED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of
Respondent.

SO REPORTED and RECOMMENDED this 22nd day of May, 2023, at Augusta,
Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA